Tod F. Schleier, State Bar No. 004612
Bradley H. Schleier, State Bar No. 011696
SCHLEIER LAW OFFICES, P.C.
3101 N. Central Avenue
Suite 1090
Phoenix, AZ 85012
Telephone: (602) 277-0157
Facsimile:  (602) 230-9250
tod@schleierlaw.com
brad@schleierlaw.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Following Page]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| ALLAN SANDERS, ANGELO FORT, LYNN CASTRO, EUGENE BELVIN, TAMIE BARNES, et. al, on behalf of themselves and all employees similarly situated,<br><br>Plaintiffs,<br><br>- vs -<br><br>SERVICE CORPORATION INTERNATIONAL; SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC.; SCI WESTERN MARKET SUPPORT CENTER, L.P. a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC.; JANE D. JONES; GWEN PETTEWAY; THOMAS RYAN; THE SCI 401K RETIREMENT SAVINGS PLAN; and JULIE DOUGLAS,<br><br>Defendants. | Case No.<br><br>**COMPLAINT— Class Action<br>DEMAND FOR JURY TRIAL** |

1

Additional Attorneys for Plaintiffs, who will
submit applications to appear *pro hac vice*:

2

J. Nelson Thomas, NY Attorney No. 2579159

3

Patrick J. Solomon, NY Attorney No. 2716660
Annette Gifford, NY Attorney No. 4105870

4

THOMAS & SOLOMON LLP
693 East Avenue

5

Rochester, NY 14607
Telephone: (585) 272-0540

6

Facsimile:  (585) 272-0574
nthomas@theemploymentattorneys.com

7

Charles H. Saul, PA State Bar No.19938

8

Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661

9

MARGOLIS EDELSTEIN
525 William Penn Place

10

Suite 3300
Pittsburgh, PA 15219

11

Telephone: (412) 281-4256
Facsimile: (412) 642-2380

12

csaul@margolisedelstein.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

**CLASS ACTION COMPLAINT**

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Schleier Law Offices, P.C., Thomas & Solomon LLP, and Margolis Edelstein, and file the following Class Action Complaint:

## I.   INTRODUCTION

1.   This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"); under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1332(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1059(a)(1), for defendants' failure to maintain accurate payroll records and credit plaintiffs' 401(k) plans with their non-reduced weekly wages and correct overtime compensation; and under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq*., for defendants' pattern of activity in employing the mails to pursue a scheme of improperly obtaining plaintiffs' property by means of false or fraudulent pretenses or representations.

## II.   JURISDICTION AND VENUE

2.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under 28 U.S.C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, under 29 U.S.C. §216 (b), and under 18 U.S.C. § 1964(a) and (c).

3.   Venue is appropriate in the District of Arizona because unlawful acts alleged in this complaint were committed in this district and because defendants conduct business in this District.   Additionally, plaintiff Allan Sanders was employed by defendants, suffered violations, and currently resides in this District.   Venue is proper before this Court

1    under 28 U.S.C. § 1391(b).

2    **III.    PROCEDURAL HISTORY**

3        4.    On December 12, 2006, a class and collective action complaint was filed in

4    the Western District of Pennsylvania against Service Corporation International ("SCI") and

5    Alderwoods Group, Inc. ("Alderwoods") alleging that employees who worked at

6    defendants' funeral home locations were not properly paid for all the time they worked

7    ("*Prise*").   Prior to the filing of the *Prise* complaint, SCI had acquired Alderwoods and

8    Alderwoods had become SCI's wholly-owned subsidiary.  After the merger, SCI continued

9    to operate the vast majority of both its own funeral homes and those of Alderwoods.

10       5.    Some or all of the plaintiffs' claims asserted in this action were tolled during

11   the *Prise* action including, *inter alia*, subject to a tolling order reflected at *Prise* docket

12   entry no. 108.  W.D. Pa. Civil Action No. 06-1641.

13       6.    On November 15, 2007, the *Prise* Court dismissed the claims against SCI

14   without prejudice, determining it would hear only claims on behalf of employees who

15   worked only for Alderwoods, and that claims of employees who had worked only at other

16   SCI locations should be heard in a separate action.

17       7.    On January 15, 2008, plaintiffs filed a separate action in the District of

18   Arizona, *Stickle, et al. v. SCI Western Market Support Center, L.P., et al.* ("*Stickle*")*,* on

19   behalf of SCI employees who did not work at an Alderwoods location.  The *Stickle* action

20   alleges violations of certain federal laws, including the Fair Labor Standards Act, for

21   failure to properly compensate employees pursuant to various policies.

22       8.    Some or all of the plaintiffs' claims asserted in this action were tolled during

23   the *Stickle* action including, *inter alia*, subject to a tolling order reflected at *Stickle* docket

24   entry no. 207.  D. Az. Case No. 08-cv-83.

25   **IV.    CLASS ACTION ALLEGATIONS**

26       9.    The claims arising under ERISA and RICO are properly maintainable as a

27   class action under Federal Rule of Civil Procedure 23.

10.     The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

11.     The class consists of current and former employees of defendants whose 401(k) plans were not credited with their non-reduced weekly wages and correct overtime compensation.   Additionally, the class consists of current and former employees of defendants who were injured by defendants' scheme to cheat employees out of their property and to convert the employees' property, including their wages and/or overtime pay, by misleading employees about their rights under the FLSA.

12.     The class size is over 40 employees.

13.     Plaintiffs will adequately represent the interests of the class members because they are similarly situated to the class members and their claims are typical of, and concurrent to, the claims of other class members.

14.     There are no known conflicts of interest between Named Plaintiffs and other class members.

15.     The class counsel, Schleier Law Offices, P.C., Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate the class members' claims.

16.     The class counsel is experienced in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal statutes.

17.     Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' policy of not crediting employees with their non-reduced weekly wages and correct overtime compensation is a violation of ERISA or was part of a scheme to defraud plaintiffs in violation of RICO.

18.     The class action is maintainable under subsections (2) and (3) of Rule 23(b) because plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## V.    PARTIES

### A.    Plaintiffs

19.    The plaintiffs ("Plaintiffs") are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  "Plaintiffs" expressly includes each individual identified in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action.

20.    Attached to this complaint in its **Appendix A** are the current Plaintiffs' consent forms seeking recovery against their employers in an FLSA action.  Each of these individuals, as well as any individual who opts-in to this action, has full party status pursuant to 29 U.S.C. § 216 (b).

21.    Defendants are liable to Plaintiffs as employers, joint employers, single employers, alter egos and/or otherwise according to federal and state common law.

### B.    Defendants

22.    Defendants SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative") and SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western") are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

23.    Defendant The SCI 401K Retirement Savings Plan (the "Plan") is a 401(k) plan in which Plaintiffs are or were eligible to participate.

24.    Defendant SCI sponsors the Plan, and defendants the SCI Cooperative and SCI Western benefit from the Plan.

25.    Defendant Julie Douglas is the administrator of the Plan.

26.    Upon information and belief, defendants are Plaintiffs' fiduciaries with respect to the Plan.

27.    At all times relevant to this action, defendants are employers of Plaintiffs within the meaning of 29 U.S.C. § 203 (d) and comprise an "enterprise" engaged in

commerce as defined in 20 U.S.C. §§ 203(r), 203(s).

*SCI Western is Liable to Plaintiffs*

28.     SCI Western is a limited partnership or corporation which is owned, directly or indirectly, by SCI.

29.     SCI Western, along with SCI's other Market Support Centers, SCI Eastern and SCI Houston (collectively referred to as the "SCI Support Centers") provide human resources and other support services to the individual locations in their respective markets.

30.     The primary functions of SCI Western as an SCI Support Center are to help facilitate the execution of corporate strategies, coordinate communications between the field and corporate offices, and serve as liaisons for the implementation of policies and procedures.

31.     SCI Western, as an SCI Support Center, provides "day-to-day human resources services and support for individual locations," including "**all** executive, management, administrative, accounting, data processing, and **human resources services** for [defendants'] locations."  **Appendix B**, declaration of Judith M. Marshall dated July 5, 2007, at ¶4 (emphasis added).

32.     "[O]n-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with" the SCI Support Centers, including SCI Western.  Appendix B at ¶ 6.

33.     Each SCI Support Center, including SCI Western, has an ownership interest in the SCI Cooperative and together the SCI Support Centers collectively own a majority of the SCI Cooperative.

34.     The SCI Support Centers, including SCI Western, through their controlling interest in the SCI Cooperative, provide "Dignity University training programs" by which defendants ensure uniform services at their nationwide locations, publish and maintain the weekly newsletter "Frontline," and the "Global Village" intranet site, through which defendants communicate with their nationwide employees, and administer benefit plans for

employees and contract with third-party benefit providers to respond to questions related to day-to-day benefits services.   Appendix B at ¶¶6-7; **Appendix C**, declaration of Gwen Petteway dated July 9, 2007, at ¶5.

35.      Additionally, the SCI Support Centers, including SCI Western, maintain a payroll department and database which centralize information regarding Plaintiffs, including employment records and payroll information through their controlling interest in the SCI Cooperative.  **Appendix D**, declaration of Liana Jensen dated October 4, 2007, at ¶3.

36.      Defendants' public filings reflect that SCI and the entities it owns, directly or indirectly, including SCI Western, employ "a single line management model in an effort to streamline the organization and ensure that operational efficiencies [are] achieved throughout the SCI network."

37.      Defendants' public filings reflect that the funeral home locations that SCI owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

38.      Upon information and belief, including defendants' admissions, the SCI Support Centers, including SCI Western, due in part to their role of providing all human resources services for defendants' locations, in concert with others, are actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

39.      Upon information and belief, including defendants' admissions, the SCI Support Centers, including SCI Western, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively advise

1  defendants' agents on the enforcement of the illegal policies complained of in this case,
2  including, but not limited to, the On Call Pay Policy, Community Work Policy, Training
3  Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-
4  Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy
5  regarding the calculation of Plaintiffs' overtime.

6          40.     Upon information and belief, including defendants' admissions, the SCI
7  Support Centers, including SCI Western, due in part to their role of providing all human
8  resources services for defendants' locations, in concert with others, actively ensure
9  defendants' compliance or non-compliance with federal law, including the requirements of
10 the FLSA, ERISA and RICO.

11         41.     Upon information and belief, including defendants' admissions, the SCI
12 Support Centers, including SCI Western, in concert with others, play a central role in
13 reviewing and counseling defendants regarding employment decisions, including hiring
14 and firing of Plaintiffs.

15         42.     Upon information and belief, including defendants' admissions, the SCI
16 Support Centers, including SCI Western, in concert with others, have the authority to, and
17 do, through their agents, make decisions that set employees' schedules, hours and standard
18 benefit levels.

19         43.     Upon information and belief, including defendants' admissions, the SCI
20 Support Centers, including SCI Western, in concert with others, have the authority to, and
21 do, through their agents, make decisions that set standard pay scales.

22         44.     Upon information and belief, including defendants' admissions, the SCI
23 Support Centers, including SCI Western, in concert with others, determine and draft
24 policies, answer questions regarding human resources issues and policies, resolve issues
25 regarding policies and their application, counsel locations on human resources issues, and
26 communicate with employees about company issues and human resources issues and
27 policies, including issues related to hours worked and payment for such hours worked.

45.     Upon information and belief, including defendants' admissions, the SCI Support Centers, including SCI Western, in concert with others, have the authority to, and do, through their agents, provide employees with information regarding benefit plans and providers, oversee the implementation and execution of benefit plans, retain ultimate authority for providing information and responding to questions regarding the benefit plans, maintain records regarding the benefit plans, make determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and are responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

46.     Upon information and belief, including defendants' admissions, the SCI Support Centers, including SCI Western, in concert with others, have the authority to, and do, through their agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

47.     Upon information and belief, including defendants' admissions, the SCI Support Centers, including SCI Western, have a primary function of facilitating the execution of corporate strategies that includes maintaining and directing a single, integrated set of operations across the SCI network.

48.     Upon information and belief, including defendants' admissions, the SCI Support Centers, including SCI Western, are responsible for, and subject to, centralized management directions and decisions.

49.     The SCI Support Centers, including SCI Western, are owned, directly or indirectly, by defendant SCI.  Additionally, SCI maintains an ownership interest, directly or indirectly, in the SCI Cooperative that is owned by the SCI Support Centers, including SCI Western.

50.     Upon information and belief, the SCI Support Centers, including SCI Western, are part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent

1  manner.  This network promotes a fraud or injustice, in that it attempts to avoid liability for

2  paying its common employees and prevents employees from accurately identifying their

3  employers.

4      51.  Because the SCI Support Centers, including SCI Western, have authority to

5  hire or fire employees, provide day-to-day support regarding human resources issues,

6  including the hiring and firing of employees, and control the drafting and enforcement of

7  the policies which govern the hiring and firing of employees, the SCI Support Centers,

8  including SCI Western, have the power to hire and fire employees.

9      52.  Because the SCI Support Centers, including SCI Western, have authority to

10  establish employees' work schedules and/or conditions of employment, provide day-to-day

11  support regarding human resources issues, including employees' work schedules and/or

12  conditions of employment, control the drafting and enforcement of the policies which

13  govern employees' schedules and/or conditions of employment, and administer

14  employees' benefit programs, the SCI Support Centers, including SCI Western, supervise

15  and control employees' work schedules and/or conditions of employment.

16      53.  Because the SCI Support Centers, including SCI Western, have authority to

17  establish employees' rate and method of payment and centrally control payroll functions,

18  the SCI Support Centers, including SCI Western, determine the rate and method of

19  employees' payment.

20      54.  Because the SCI Support Centers, including SCI Western, play a central role

21  in the keeping of centralized records, including a database, regarding employees'

22  employment records, the SCI Support Centers, including SCI Western, maintain

23  employees' employment records.

24      55.  For all of the foregoing reasons, among others, including the provision of

25  services and support by the SCI Support Centers, including SCI Western, with respect to

26  "all executive, management, administrative, accounting, data processing, and human

27  resources services," training, and nationwide communications with employees, the SCI

Support Centers, including SCI Western, provide centralized control over defendants' labor relations.

56.     Because the SCI Support Centers, including SCI Western, provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employee's benefit programs, they are affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in relation to the employment of Plaintiffs.

57.     Because the SCI Support Centers, including SCI Western, are actively involved in the creation of the illegal policies complained of in this case, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensure defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, the SCI Support Centers, including SCI Western, actively participate in the violations complained of in this action.

58.     Because the SCI Support Centers, including SCI Western, together with the SCI Cooperative, are owned by SCI, directly or indirectly, the SCI Support Centers, including SCI Western, share common ownership with other defendants.

59.     Because the SCI Support Centers, including SCI Western, are subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Support Centers, including SCI Western, share common management with other defendants.

60.     Because the SCI Support Centers, including SCI Western, are subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, the SCI Support Centers, including SCI Western, and other defendants share functional integration of

1   operations.

2   61.   Because the SCI Support Centers, including SCI Western, control the

3   drafting and enforcement of the employment and human resources policies related to

4   employees, centrally control the payroll functions related to employees' employment,

5   provide services and support with respect to "all executive, management, administrative,

6   accounting, data processing, and human resources services," training, and nationwide

7   communications with employees, and are subject to a network-wide single line

8   management model, the SCI Support Centers, including SCI Western, are not completely

9   disassociated with respect to employees' employment.

10   62.   The SCI Support Centers, including SCI Western, may be deemed to share

11   control of employees, directly or indirectly, by reason of the fact that they are under

12   common control with the SCI Cooperative and the funeral home locations because they are

13   all owned by SCI, directly or indirectly, and because the SCI Support Centers, including

14   SCI Western, control the drafting and enforcement of the employment and human

15   resources policies related to Plaintiffs, centrally control the payroll functions related to

16   employees' employment, provide services and support with respect to "all executive,

17   management, administrative, accounting, data processing, and human resources services,"

18   training, and nationwide communications with employees, and are subject to a network-

19   wide single line management model.

20   63.   Because the SCI Support Centers, including SCI Western, are part of an

21   extensive and complex network through which SCI promotes a fraud or injustice in

22   attempting to shield from liability itself and other entities which are responsible for

23   employees' employment and in preventing employees from accurately determining the

24   identity of their employers, the SCI Support Centers, including SCI Western, are an alter

25   ego of SCI and the other entities SCI owns.

26   64.   Based upon the foregoing, SCI Western is liable to Plaintiffs because of its

27   active role in operating the business, its role in the violations complained of in this action,

its status as employer, joint employer, single employer, alter ego, or otherwise according to federal and state common law.

***The SCI Cooperative Is Liable to Plaintiffs***

65.     The SCI Cooperative is a Delaware corporation which is owned, directly or indirectly, by SCI and the SCI Support Centers.

66.     The SCI Cooperative, through agreements with the SCI Support Centers, "provide[s] additional human resources services and support" for the funeral home locations.  Appendix B at ¶4.

67.     "[O]n-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with" the SCI Cooperative.  Appendix B at ¶6.

68.     The SCI Cooperative publishes and maintains the weekly newsletter "Frontline," and the "Global Village" intranet site, publications through which defendants communicate with their nationwide employees.  Appendix B at ¶7.

69.     The SCI Cooperative administers benefits by "contract[ing] with third-party benefit providers to respond to questions related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information.  To the extent that those third-party providers cannot respond to questions, [the SCI Cooperative] will respond."  Appendix C at ¶5.

70.     The SCI Cooperative maintains a payroll department and "a database that contains information on current and former employees of SCI subsidiaries."  Appendix D at ¶3.

71.     Defendants' public filings reflect that SCI and the entities it owns directly or indirectly, including the SCI Cooperative, employ "a single line management model in an effort to streamline the organization and ensure that operational efficiencies [are] achieved throughout the SCI network."

72.     Defendants' public filings reflect that the funeral home locations that SCI

13

owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

73.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

74.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

75.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

76.    Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, plays a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

77.    Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents,

make decisions that set employees' schedules, hours, and standard benefit levels.

78.   Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents, make decisions that set standard pay scales.

79.   Upon information and belief, including defendants' admissions, the SCI Cooperative determines and drafts policies, answers questions regarding human resources issues and policies, resolves issues regarding policies and their application, counsels locations on human resources issues, and communicates with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

80.   Upon information and belief, including defendants' admissions, the SCI Cooperative provides employees with information regarding benefit plans and providers, oversees the implementation and execution of benefit plans, retains ultimate authority for providing information and responding to questions regarding the benefit plans, maintains records regarding the benefit plans, makes determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and is responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

81.   Upon information and belief, including defendants' admissions, the SCI Cooperative maintains payroll records regarding employees and, in concert with others, the SCI Cooperative has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

82.   Upon information and belief, including defendants' admissions, the SCI Cooperative's functions in providing services and support regarding human resources, training, benefits administration, and payroll include a function maintaining and directing a single, integrated set of operations across the SCI network.

83.   Upon information and belief, including defendants' admissions, the SCI

Cooperative is responsible for, and subject to, centralized management directions and decisions.

84. The SCI Cooperative is owned, directly or indirectly, by defendants SCI and the SCI Support Centers. Additionally, SCI owns the SCI Support Centers, directly or indirectly.

85. Upon information and belief, the SCI Cooperative is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner. This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

86. Because the SCI Cooperative has authority to hire or fire Plaintiffs, provides day-to-day support regarding human resources issues, including the hiring and firing of Plaintiffs, and controls the drafting and enforcement of the policies which govern the hiring and firing of employees, the SCI Cooperative has the power to hire and fire employees.

87. Because the SCI Cooperative has authority to establish employees' work schedules and/or conditions of employment, provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, the SCI Cooperative supervises and controls employees' work schedules and/or conditions of employment.

88. Because the SCI Cooperative has authority to establish employees' rate and method of payment and centrally control payroll functions, the SCI Cooperative determines the rate and method of employees' payment.

89. Because the SCI Cooperative keeps centralized records, including a database, regarding employees' employment records, the SCI Cooperative maintains

employees' employment records.

90.    For all of the foregoing reasons, among others, including the SCI Cooperative's human resources services and support, training function, publication of communications across the SCI network, administration of benefit programs, and maintenance of the payroll department, the SCI Cooperative provides centralized control over defendants' labor relations.

91.    Because the SCI Cooperative provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, it is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly as it relates to the employment of the plaintiffs.

92.    Because the SCI Cooperative is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, the SCI Cooperative actively participates in the violations complained of in this action.

93.    Because the SCI Cooperative, together with the SCI Support Centers, is owned by SCI, directly or indirectly, the SCI Cooperative and other defendants share common ownership.

94.    Because the SCI Cooperative is subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Cooperative and other defendants share common management.

95.    Because the SCI Cooperative is subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and

1    achieving operational efficiencies, the SCI Cooperative and other defendants share

2    functional integration of operations.

3    96.    Because the SCI Cooperative controls the drafting and enforcement of the

4    employment and human resources policies related to employees, centrally controls the

5    payroll functions related to employees' employment, provides services and support with

6    respect to human resources, training, and nationwide communications with employees, and

7    is subject to a network-wide single line management model, the SCI Cooperative is not

8    completely disassociated with respect to employees' employment.

9    97.    The SCI Cooperative may be deemed to share control of employees, directly

10   or indirectly, by reason of the fact that it is under common control with the SCI Support

11   Centers and the funeral home locations because they are all owned by SCI, directly or

12   indirectly, and because the SCI Cooperative controls the drafting and enforcement of the

13   employment and human resources policies related to employees, centrally controls the

14   payroll functions related to employees' employment, provides services and support with

15   respect to human resources, training, and nationwide communications with employees, and

16   is subject to a network-wide single line management model.

17   98.    Because the SCI Cooperative is part of an extensive and complex network

18   through which SCI promotes a fraud or injustice in attempting to shield from liability itself

19   and other entities which are responsible for employees' employment and in preventing

20   employees from accurately determining the identity of their employers, the SCI

21   Cooperative is an alter ego of SCI and the other entities SCI owns.

22   99.    Based upon the foregoing, the SCI Cooperative is liable to Plaintiffs because

23   of its active role in operating the business, its role in the violations complained of in this

24   action, its status as employer, joint employer, single employer, alter ego, or otherwise

25   according to federal and state common law.

26   **_SCI Is Liable to Plaintiffs_**

27   100.   Defendant SCI is a corporation with its headquarters being at 1929 Allen

18

Parkway, Houston, Texas 77019.

101.   SCI owns, directly or indirectly, various funeral home locations and various other companies or entities, including the SCI Cooperative and the SCI Support Centers, in a nationwide enterprise.

102.   Defendants' public filings reflect that SCI and the entities it owns directly or indirectly, including the SCI Cooperative and the SCI Support Centers, employ "a single line management model in an effort to streamline the organization and ensure that operational efficiencies [are] achieved throughout the SCI network."

103.   Defendants' public filings reflect that the funeral home locations that SCI owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

104.   Upon information and belief, including defendants' admissions, at all relevant times all functions at all entities in the SCI network, including the SCI Cooperative and the SCI Support Centers, reported to SCI, directly or indirectly.

105.   Upon information and belief, including defendants' admissions, at all relevant times SCI maintained control and authority, directly or indirectly, over all functions at the entities in the SCI network, including the SCI Cooperative and the SCI Support Centers.

106.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

107.   Upon information and belief, including defendants' admissions, SCI, in

19

concert with others, has the authority to, and does, through its agents, make decisions concerning advising defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

108.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

109.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

110.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' schedules, hours and standard benefit levels.

111.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning standard pay scales.

112.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the determination and drafting of policies, answering questions regarding human resources issues and policies, resolving issues regarding policies and their application, counseling locations on human resources issues, and communicating with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

113.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning providing employees with information regarding benefit plans and providers, overseeing the implementation and execution of benefit plans, providing information and responding to questions regarding the benefit plans, maintaining records regarding the benefit plans, making determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

114.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

115.   SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning maintaining and directing a single, integrated set of operations across the SCI network.

116.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning centralized management directions and decisions.

117.   Upon information and belief, SCI is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner.  This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

118.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning hiring or firing employees, providing support regarding human resources issues, including the hiring and firing of Plaintiffs, and controlling the drafting and enforcement of the policies which govern the hiring and firing

of employees, SCI has the power to hire and fire employees.

119.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' work schedules and/or conditions of employment, providing support regarding human resources issues, including Plaintiffs' work schedules and/or conditions of employment, controlling the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administering employees' benefit programs, SCI supervises and controls employees' work schedules and/or conditions of employment.

120.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' rate and method of payment and centrally controlling payroll functions, SCI determines the rate and method of employees' payment.

121.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning centralized records, including a database, regarding employees' employment records, SCI maintains employees' employment records.

122.   For all of the foregoing reasons, among others, including SCI's authority and exercise of authority with respect to human resources services and support, training function, publication of communications across its network, administration of benefit programs, and maintenance of the payroll department, SCI provides centralized control over defendants' labor relations.

123.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning human resources issues, including employees' work schedules and/or conditions of employment, controlling the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administering employees' benefit programs, it plays a central role in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs.

124.   Because SCI, in concert with others, has the authority to, and does, through

1   its agents, make decisions concerning the illegal policies complained of in this case,

2   advising of defendants' agents on the enforcement of the illegal policies complained of in

3   this case and ensuring defendants' compliance or non-compliance with federal law,

4   including the requirements of the FLSA, ERISA and RICO, SCI plays a central role in the

5   violations complained of in this action.

6   125.   Because SCI owns, directly or indirectly, the SCI Cooperative and the SCI

7   Support Centers, SCI and the other defendants share common ownership.

8   126.   Because SCI maintains and is subject to centralized management directions

9   and decisions that govern the entities it owns, directly or indirectly, including a single line

10  management model applicable to the entire SCI network, SCI and the other defendants

11  share common management.

12  127.   Because SCI maintains and is subject to a single line management model

13  applicable to the entire SCI network for the purpose of streamlining the organization and

14  achieving operational efficiencies, SCI and the other defendants share functional

15  integration of operations.

16  128.   Because SCI, in concert with others, has the authority to, and does, through

17  its agents, make decisions concerning drafting and enforcing employment and human

18  resources policies related to employees, centrally controlling the payroll functions related

19  to employees' employment, providing services and support with respect to human

20  resources, training, and nationwide communications with employees, and is subject to a

21  network-wide single line management model, SCI is not completely disassociated with

22  respect to employees' employment.

23  129.   SCI may be deemed to share control of employees, directly or indirectly, by

24  reason of the fact that it is under common control with the SCI Cooperative, the SCI

25  Support Centers and the funeral home locations, all of which are owned by SCI, directly or

26  indirectly, and because SCI plays a central role in the drafting and enforcement of the

27  employment and human resources policies related to employees, centrally controlling the

payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and maintains and is subject to a network-wide single line management model.

130.    Because SCI maintains and is part of an extensive and complex network through which it promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, SCI is an alter ego of the other defendants and the other entities it owns.

131.    Based upon the foregoing, SCI is liable to employees because of its central role in operating the business, its role in the violations complained of in this action, its status as employer, joint employer, single employer, alter ego, or otherwise according to federal and state common law.

***Jane D. Jones Is Liable to Plaintiffs***

132.    Defendant Jane D. Jones has acted as Vice President of Human Resources for SCI since 2005.

133.    Defendants' public filings reflect that Ms. Jones "oversees human resources, training and education, and payroll and commission services – activities that assist approximately 20,000 employees in North America."

134.    Upon information and belief, including defendants' admissions, Ms. Jones is responsible for, provides direction and control over, and is authorized to direct all aspects of human resources functions across SCI's network.

135.    Upon information and belief, including defendants' admissions, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

1  Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of

2  Plaintiffs' overtime.

3        136.   Upon information and belief, including defendants' admissions, due in part

4  to her role of overseeing human resources, training and education, and payroll and

5  commission services, in concert with others, Ms. Jones actively advises defendants' agents

6  on the enforcement of the illegal policies complained of in this case, including the On Call

7  Pay Policy.

8        137.   Upon information and belief, including defendants' admissions, due in part

9  to her role of overseeing human resources, training and education, and payroll and

10  commission services, in concert with others, Ms. Jones actively ensures defendants'

11  compliance or non-compliance with federal law, including the requirements of the FLSA,

12  ERISA and RICO.

13        138.   Upon information and belief, including defendants' admissions, Ms. Jones,

14  in concert with others, is actively involved in reviewing and counseling defendants

15  regarding employment decisions, including hiring and firing of Plaintiffs.

16        139.   Upon information and belief, including defendants' admissions, Ms. Jones,

17  in concert with others, is actively involved in decisions that set employees' schedules,

18  hours and standard benefit levels.

19        140.   Upon information and belief, including defendants' admissions, Ms. Jones,

20  in concert with others, is actively involved decisions that set standard pay scales.

21        141.   Upon information and belief, including defendants' admissions, Ms. Jones,

22  in concert with others, is actively involved in the determination and drafting of human

23  resources policies, the resolution of issues and disputes regarding policies and their

24  application, the counseling locations receive regarding human resources issues, and

25  communications with employees about human resources issues and policies.

26        142.   Upon information and belief, including defendants' admissions, Ms. Jones,

27  in concert with others, is actively involved in defendants' employment and human

resources records, including the systems for keeping and maintaining those records.

143.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in training and education functions across SCI's network.

144.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

145.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in payroll and commission functions across SCI's network.

146.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

147.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in benefit plans across SCI's network.

148.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

149.   Because Ms. Jones has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Jones has the power to hire and fire employees.

150.   Because Ms. Jones has authority to establish work schedules and/or

conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Jones supervises and controls employees' work schedules and/or conditions of employment.

151.    Because Ms. Jones has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Jones determines the rate and method of employees' payment.

152.    Because Ms. Jones has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Jones maintains employees' employment records.

153.    Because Ms. Jones provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs.

154.    Because Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, Ms. Jones actively participates in the violations complained of in this action.

155.    Based upon the foregoing, Ms. Jones is liable to Plaintiffs because of her

1   active role in operating the business, her role in the violations complained of in this action,

2   her status as an employer, or otherwise according to federal and state common law.

3   ***Gwen Petteway Is Liable to Plaintiffs***

4   156.   Defendant Gwen Petteway has acted as Human Resources Director of

5   defendant SCI Houston since 2005.

6   157.   Ms. Petteway's job responsibilities include familiarity "with the human

7   resources services of the subsidiary and affiliate companies of SCI, as well as training and

8   benefits provided to those companies."  Appendix C at ¶3.

9   158.   As Human resources Director, Ms. Petteway's job responsibilities include

10  providing and/or supervising "day-to-day human resources services and support for

11  [defendants'] funeral home locations."  Appendix C at ¶3.

12  159.   Upon information and belief, including defendants' admissions, due in part

13  to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively

14  involved, and plays a central role, in the creation of the illegal policies complained of in

15  this case, including, but not limited to, the On Call Pay Policy, Community Work Policy,

16  Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction

17  Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the

18  policy regarding the calculation of Plaintiffs' overtime.

19  160.   Upon information and belief, including defendants' admissions, due in part

20  to her role as Human Resources Director, Ms. Petteway, in concert with others, actively,

21  and in a central role, advises defendants' agents on the enforcement of the illegal policies

22  complained of in this case, including, but not limited to, the On Call Pay Policy,

23  Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,

24  Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work

25  Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

26  161.   Upon information and belief, including defendants' admissions, due in part

27  to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively

involved, and plays a central role, in ensuring defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

162.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in human resources functions across SCI's network.

163.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in day-to-day human resources services and support.

164.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

165.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in decisions that set employee's schedules, hours and standard benefit levels.

166.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in decisions that set standard pay scales.

167.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in defendants' human resources policies, resolving issues and disputes regarding policies and their applications, counseling locations receive regarding human resources issues, providing day-to-day services and support regarding human resources issues, and communications with employees about human resources issues and policies.

168.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

169.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in training and education functions across SCI's network.

170.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in decisions that determine the type and scope of training employees must attend as well as any compensation they receive for attending training.

171.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in payroll and commission functions across SCI's network.

172.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

173.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in defendants' benefit plans.

174.   Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

175.   Because Ms. Petteway has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Petteway has the power to hire and fire employees.

176.   Because Ms. Petteway has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Petteway supervises and controls employees' work schedules and/or conditions of employment.

177.   Because Ms. Petteway has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Petteway determines the rate and method of employees' payment.

178.   Because Ms. Petteway has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Petteway maintains employees' employment records.

179.   Because Ms. Petteway is actively involved, or plays a central role, in day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs.

180.   Because Ms. Petteway is actively involved, or plays a central role, in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the

requirements of the FLSA, ERISA and RICO, she actively participates, or plays a central role, in the violations complained of in this action.

181.   Based upon the foregoing, Ms. Petteway is liable to Plaintiffs because of her status as an employer according to federal and state common law.

***Thomas Ryan Is Liable to Plaintiffs***

182.   Defendant Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

183.   Upon information and belief, including defendants' admissions, Mr. Ryan's responsibilities include actively managing SCI and its network.

184.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the policies defendants adopt and the implementation of those policies.

185.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

186.   Upon information and belief, including defendants' admissions, due in part to his role as President and Chief Executive Officer, Mr. Ryan is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

187.   Upon information and belief, including defendants' admissions, due in part to his role as President and Chief Executive Officer, Mr. Ryan actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation

Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

188.    Upon information and belief, including defendants' admissions, due in part to his role as President and Chief Executive Officer, Mr. Ryan actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

189.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

190.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

191.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern standard pay scales.

192.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

193.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

194.    Upon information and belief, including defendants' admissions, in concert

with others, Mr. Ryan has the authority to, and does, make decisions that concern training and education functions across SCI's network.

195.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

196.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern payroll and commission functions across SCI's network.

197.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

198.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern benefit plans across SCI's network.

199.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

200.   Because Mr. Ryan has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Ryan has the power to hire and fire employees.

201.   Because Mr. Ryan has authority to establish work schedules and/or

conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Ryan supervises and controls employees' work schedules and/or conditions of employment.

202.   Because Mr. Ryan has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Ryan determines the rate and method of employees' payment.

203.   Because Mr. Ryan has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Ryan maintains employees' employment records.

204.   Because Mr. Ryan provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Plaintiffs.

205.   Because Mr. Ryan is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, he actively participates in the violations complained of in this action.

206.   Based upon the foregoing, Mr. Ryan is liable to Plaintiffs because of his

active role in operating the business, his status as an employer, or according to federal and state common law.

## VI.     FACTUAL BACKGROUND

207.    Plaintiffs worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

208.    Defendants' policy and/or practice was to not compensate Plaintiffs for work they suffered or permitted Plaintiffs to perform.

209.    Defendants knew Plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Plaintiffs worked.

210.    Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

211.    The failure to pay overtime is willful.

212.    Examples of defendants' policies and practices to deprive Plaintiffs of their earned wages and wage premiums are set forth below:

     a.  **Subclass A:**  Defendants implemented an "On Call Pay Policy."  Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for all work performed outside the funeral or cemetery location.  In addition, defendants paid flat rates, piece rates, "special pay task" or other lump sum payments to employees for particular services when they were performed after normal business hours or while employees were on call without regard to the number of hours worked.

     b.  **Subclass B:**  Defendants implemented a "Community Work Policy."  Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants.

Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

c. **Subclass C:**  Defendants' implemented a "Training Compensation Policy."  Under the policy, defendants suffered or permitted their employees to take various types of training.  Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

d. **Subclass D:**  Defendants implemented a "Pre-Needs Appointment Policy."  Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases.  To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

e. **Subclass E:**  Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for meal breaks.  Defendants did, however, suffer and permit employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

f. **Subclass F:** Defendants implemented a "Pre-Approval for Overtime Pay Policy."  Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved.  Defendants suffered or

37

permitted employees to work overtime and therefore, employees were entitled to overtime payments.  However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

g. **Subclass G:**  Defendants implemented an "Unrecorded Work Time Policy."  Under this policy, defendants suffered or permitted employees to perform work, but directed that such work not be recorded.  Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew such time had been worked, it had not been "recorded."

h. **Subclass H:**  Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

213.   Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

214.   More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

215.   Defendants failed to keep accurate records of all time worked by employees.  By failing to keep such records, defendants' records are legally insufficient to determine benefits.

216.   Defendants failed to credit or even investigate crediting overtime pay as compensation used to determine benefits.  Defendants, while acting as fiduciaries exercising discretion over the administration of the Plan, breached their duties to act prudently and solely in the interest of the Plan's participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime or to

investigate whether such hours should be credited.  Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participants' participation vesting and accrual of rights.

217.   As used in this Complaint, "mailed" means: (1) placing in any post office or authorized depository for mailed matter, any matter or thing to be delivered by the United States Postal Service; (2) causing to be deposited any matter or thing to be delivered by any private or commercial interstate carrier; (3) taking or receiving therefrom any such matter or thing; and/or (4) knowingly causing to be delivered by any such means any such matter.

218.   Plaintiffs allege that Defendants devised, intended to devise, and carried out a scheme to cheat Plaintiffs out of their property and to convert Plaintiffs' property, including their wages and/or overtime pay (the "Scheme").  Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs their regular or statutorily required rate of pay for all hours worked in violation of federal law, employing the various policies described previously in this Complaint.

219.   Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiffs.  The Scheme involved depriving Plaintiffs of their lawful entitlement to overtime.

220.   In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs or between defendants' business locations.  These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

221.   The payroll checks were false and deceptive because they mislead Plaintiffs about the amount of wages to which they were entitled, as well as their status and rights under the FLSA.  Plaintiffs relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs'

injuries.

222.   Defendants' predicate acts of mailing the misleading payroll checks in furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C. § 1961(5) based upon both the relationship between the acts and continuity over the period of time of the acts.  The relationship was reflected because the acts were connected to each other in furtherance of the Scheme.  Continuity was reflected by both the repeated nature of the mailings during and in furtherance of the Scheme and the threat of similar acts occurring in the future.  The threat was reflected by the continuing and ongoing nature of the acts.

223.   Defendants' predicate acts were related, because they reflected the same purpose or goal (to retain wages and overtime pay due to Plaintiffs for the economic benefit of defendants and members of the enterprise); results (retention of wages and overtime pay); participants (defendants and other members of the enterprise); victims (Plaintiffs); and methods of commission (the Scheme and other acts described in the Complaint).  The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time.

224.   At all relevant times, in connection with the Scheme, defendants acted with malice, intent, knowledge, and in reckless disregard of Plaintiffs' rights.

225.   Each of the Plaintiffs is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

226.   Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

227.   Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4) and 1962(a), which was engaged in or the activities of which affected interstate and foreign commerce.

228.   Each defendant received income from a pattern of conduct unlawful under RICO, in which defendants participated through continuous instances of providing

Plaintiffs with misleading documents which defendants mailed and upon which Plaintiffs relied to their detriment.

229.   Plaintiffs were injured in their business and property under 18 U.S.C. § 1964(c) by reason of defendants' commission of conduct which was unlawful under RICO.

## CLAIM I

### FLSA

230.   The preceding paragraphs are incorporated herein as if fully set forth herein.

231.   Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs.

## CLAIM II

### ERISA

232.   The preceding paragraphs are incorporated herein as if fully set forth herein.

233.   Plaintiffs bring these claims under 29 U.S.C. § 1132(a)(3), which confers on Plan participants the right to bring suit to enjoin any violation of ERISA § 1059(a)(1).

234.   Defendants failed to keep accurate records of all time worked by Plan participants.  By failing to keep such records, defendants' records are legally insufficient to determine benefits.  Defendants failed to keep records "sufficient to determine the benefits due or which may become due" under the terms of the Plan as required by ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1).

## CLAIM III

### ERISA

235.   The preceding paragraphs are incorporated herein as if fully set forth herein.

236.   Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).

## CLAIM IV

### RICO

237.   The preceding paragraphs are incorporated herein as if fully set forth herein.

238.   Plaintiffs bring these claims under 18 U.S.C. § 1964(c), which confers on

1  private individuals the right to bring suit for any injury caused by a violation of 18 U.S.C.

2  § 1962.

3      239.   Defendants' conduct, and the conduct of other members of the enterprise,

4  injured Plaintiffs by refusing to pay their regular or statutorily required rate of pay for all

5  hours worked.  Defendants conducted or participated, directly or indirectly, in the conduct

6  of the enterprise's affairs through a pattern of racketeering activity, by devising a Scheme

7  to obtain Plaintiffs' property by means of false or fraudulent representations, at least some

8  of which were made in the misleading payroll checks which defendants mailed.

9      **WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and

10  that they be given the following relief:

11      (a)   an order preliminarily and permanently restraining defendants from engaging

12           in the aforementioned pay violations;

13

14      (b)   an award of the value of Plaintiffs' unpaid wages;

15      (c)   liquidated, compensatory, consequential, punitive and treble damages;

16

17      (d)   an award of reasonable attorneys' fees, expenses, expert fees and costs

18           incurred in vindicating Plaintiffs' rights;

19      (e)   an award of pre- and post-judgment interest; and

20

21      (f)   such other and further legal or equitable relief as this Court deems to be just

22           and appropriate.

23

24

25

26

27

1

**JURY DEMAND**

2

Plaintiffs demand a jury to hear and decide all issues of fact.

3

4

Date: June ___, 2010

5

Respectfully submitted,

6

By: _____

7

Tod F. Schleier, State Bar No. 004612
Bradley H. Schleier, State Bar No. 011696
SCHLEIER LAW OFFICES, P.C.

8

3101 N. Central Avenue
Suite 1090

9

Phoenix, AZ 85012
Telephone: (602) 277-0157

10

Facsimile:  (602) 230-9250
tod@schleierlaw.com

11

brad@schleierlaw.com

12

*Additional counsel who will submit applications
to appear pro hac vice:*

13

J. Nelson Thomas, NY Attorney No. 2579159

14

Patrick J. Solomon, NY Attorney No. 2716660
Annette Gifford, NY Attorney No. 4105870

15

THOMAS & SOLOMON LLP
693 East Avenue

16

Rochester, NY 14607
Telephone: (585) 272-0540

17

Facsimile:  (585) 272-0574
nthomas@theemploymentattorneys.com

18

psolomon@theemploymentattorneys.com
agifford@theemploymentattorneys.com

19

Charles H. Saul, PA State Bar No.19938

20

Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661

21

MARGOLIS EDELSTEIN
525 William Penn Place

22

Suite 3300
Pittsburgh, PA 15219

23

Telephone: (412) 281-4256
Facsimile: (412) 642-2380

24

csaul@margolisedelstein.com

25

Attorneys for Plaintiffs

26

27

43